**In re Howard W. BOVE, Ann M. Bove, Debtors.**

**Bankruptcy No. 8200611.**

United States Bankruptcy Court, D. Rhode Island.

May 11, 1983.

Victoria M. Almeida, Gunning, Lafazia & Gnys, Providence, R.I., for debtors.

Alden C. Harrington, Boyajian, Coleman & Harrington, Providence, R.I., for trustee.

Samuel A. Olevson, Pucci & Goldin, Inc., Providence, R.I., for Kenneth Lantini.

Michael R. Lindburg, Quincy, Mass., for Charles Cooper.

DECISION DENYING MOTION FOR SANCTIONS AND REFERENCE TO UNITED STATES ATTORNEY, ETC.

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

█ The trustee and one objecting creditor request the Court to adjudge the debtors in contempt and to impose sanctions against them [1] as a result of their filing a false Chapter 13 statement of affairs, and for other "abusive manipulations of the [b]ankruptcy process." Trustee's Memorandum in Support of Motion for Sanctions at 10.

## TRAVEL

The debtors filed a joint Chapter 13 petition on July 19, 1982, and a § 341 meeting was held on August 19, 1982. A confirmation hearing was begun on August 26, 1982, but prior to the commencement of the continued hearing the debtors filed a motion to dismiss their case, pursuant to 11 U.S.C. § 1307(b). On September 24, 1982, Kenneth Lantini, an unsecured creditor, filed a motion to convert the case to one under Chapter 7, and also filed a motion for sanctions against the debtors and Attorney Diane Moriarty, who appeared as counsel of record on the original petition.

After lengthy hearings on the various motions on September 22, September 29, October 14, and October 21, 1982, the debt- ors' motion to dismiss was reluctantly granted [2] on November 23, 1982, and Lantini's motion to convert was denied. Also, a motion by Attorney Diane Moriarty to withdraw as counsel for the debtors was granted, whereupon Lantini withdrew his motion to impose sanctions against her. Subsequently, the debtors were represented by Attorney Victoria Almeida who had first appeared on their behalf at the confirmation hearing. The only matter not ruled upon is a motion by Lantini (in which the trustee joins and has submitted a memorandum), requesting the court to adjudge the debtors in contempt and to impose sanctions against them.[3]

## FACTS

Evidence concerning the debtors' preparation and filing of their Chapter 13 petition was presented as follows: In July 1982 Charles Cooper, the principal and operator of Consumer Credit Counselors, mailed a letter to the debtors advising them that his firm was available to assist them with their financial problems. That letter was signed "Charles J. Cohen". (Trustee's Exhibit 3). In explanation, Cooper testified that he sometimes uses the name Cohen when corresponding with potential clients facing foreclosure or sheriff's sales, as an in-house method of distinquishing these from other types of clients. Cooper testified that his company regularly mails such letters to

---

1. The objecting creditor seeks to have the debtors adjudged in contempt. The trustee, in his memorandum, requests the assessment of attorney fees and costs against the debtors. The Bankruptcy Court has the inherent power to punish for contempt, *see* 1 *Collier on Bankruptcy*, ¶ 3.01[5] (15th ed. 1983), and to impose sanctions in the form of costs and attorney fees. 11 U.S.C. § 105; *Spicer v. Woodhouse (In re Woodhouse)*, 17 B.R. 275 (Bkrtcy.S.D. Ohio 1982).

2. The decision to grant the motion to dismiss was made pursuant to 11 U.S.C. § 1307(b), which provides:

   (b) On request of the debtor at any time if the case has not been converted under section 706 or 1112 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

The trustee withdrew his objection to the motion based on his assumption that the debtors have the absolute right to dismissal pursuant to § 1307(b), a view with which we may not now be in complete agreement. *See generally, In re Case,* 24 B.R. 844 (Bkrtcy.D.S.D.1983).

3. We find it unnecessary to consider the question whether the Court may adjudge debtors in contempt and impose sanctions, *after* dismissal of their case, but relative to conduct which took place during the pendency of the case. In the present circumstances, we are not ordering such action but merely noting our observations and referring the matter to other authorities. *See* p. 907 infra. This seems appropriate in light of the protracted hearings, some of which continued at the parties' insistence, even after the Court had indicated that the case would have to be dismissed.

property owners whose real estate is advertised in local newspapers for foreclosure or sheriff's sale.

After receiving the letter, Howard Bove met with Cooper ("Cohen"?) and discussed his financial situation generally, as well as matters necessary to prepare and file a Chapter 13 case. Bove testified that at that meeting, Cooper told him that he need not schedule his wife's assets or their property in Florida. Cooper denies having given such advice. I accept Bove's version as to this. Cooper conceded that he is not an attorney, and that "W. Bloom, Esq.",[4] listed on Consumer Credit Counselors' letterhead (Trustee's Exhibits 1–5) as "staff attorney," never worked for the company. Cooper also admitted that he signed Attorney Diane Moriarty's name on the petition before she had seen it, and without her knowledge.[5]

It is asserted that the debtors have substantial assets which were not scheduled, including stocks, bonds, mutual funds, and real estate in Florida, and also that their Providence address as stated in their petition is the location of property which the debtors own and lease, but that their actual residence is in Florida. Because of this and other allegedly false information contained in their schedules and statement of affairs, the trustee and Mr. Lantini argue that sanctions should be imposed against the debtors. In court, Howard Bove readily admitted to the failure to disclose, and supplied all of the information requested with respect to assets, the facts prior to the filing of the petition, and anything else that was asked of him.

■ The evidence does establish that the petition and schedules filed by the Boves contain significant omissions and/or misstatements. Although we view this conduct at least as seriously as do the moving parties, the Boves will not be held in contempt, and sanctions will not be imposed, not because the debtors should come out of this proceeding unscathed, but because the remedies sought are inappropriate in the circumstances of this case. Other active participants in this scenario of misconduct, namely Cooper and Moriarty, are being overlooked, for reasons not apparent to this Court. The evidence revealed a situation which raises serious questions concerning the ethical practices of Cooper and Moriarty. The alleged misconduct and the remedies involved are wide ranging, and should be pursued by means other than through this Court's limited and even questionable contempt power,[6] or its authority to impose sanctions.[7]

---

4. It does not appear whether W. Bloom, Esq. is a living attorney who just is not an employee of Consumer Credit Counselors, or whether "W. Bloom, Esq." is as fictitious as "Charles J. Cohen". In either event, such practices do little to enhance Cooper's credibility.

5. The record is not clear as to whether Cooper had Moriarty's general authority to sign her name as attorney for debtors on bankruptcy petitions, although this inference can reasonably be drawn from the entire record.

6. The contempt power has been called into question by one court which held that the power to punish for contempt is limited to Article III courts. *Lindsey v. Cryts (In re Cox Cotton Co.),* 24 B.R. 930, 9 B.C.D. 1176, 1189 (E.D.Ark. 1982).

7. For example, the alleged acts of the debtor and the sanctions requested by Mr. Lantini (incarceration) are specifically covered in 18 U.S.C. § 152 which provides in part:

> Whoever knowingly and fraudulently makes a false oath or account in or in relation to any case under title 11; or
>
> Whoever knowingly and fraudulently makes a false declaration, certificate, verification, or statement under penalty or perjury as permitted under section 1746 of title 28, United States Code, in or in relation to any case under title 11;
>
> . . . .
>
> Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

Additionally, 18 U.S.C. § 3057 provides for the reporting of potential violations of the bankruptcy laws to the United States attorney:

> 18 U.S.C. § 3057. Bankruptcy investigations.
>
> (a) Any judge, receiver, or trustee having reasonable grounds for believing that any violation under chapter 9 of this title or other laws of the United States relating to insolvent debtors, receiverships or reorganization plans has been committed, or that an investigation should be had in connection therewith, shall report to the appropriate United States

In connection with the dim view we take as to the actions of Cooper, Moriarty, and the Boves, the Court feels compelled to note some of its observations: With respect to Ann Bove, who did testify, it is clear that her capacity and/or general awareness was considerably diminished from what I consider normal, and that she shares none of the responsibility for any of the activities in question.[8] As for Howard Bove, notwithstanding the conflict in the testimony, I am satisfied that any misrepresentations made by him in the schedules were induced, at least in part, by advice received from Cooper, acting for Consumer Credit Counselors, and probably in behalf of Diane Moriarty. Serious allegations of misconduct, from perjury as to the Boves, to various consumer protection violations and possible subornation of perjury as to Cooper, have been made. In addition, the question whether Diane Moriarty authorized Cooper to sign her name on bankruptcy petitions and schedules for these and other debtors, without ever having seen or counselled them, deserves further attention, but that issue has also been removed from this Court's consideration. These charges go well beyond the narrow but serious charge of omission or misstatement by the debtors in their petition and schedules.

All these matters should be pursued, and it is this Court's recommendation, in view of the investigative nature of the things that need to be looked into, and based on the record of these proceedings, that the United States Attorney, the office of the United States Trustee, the Massachusetts Attorney General, Consumer Protection Division, and the appropriate disciplinary committees of the Rhode Island and Massachusetts Bar Associations should be advised of these disclosures, for whatever action they deem proper.

For the reasons stated, the motion is denied, but copies of this decision and the recommendations herein should be mailed to: the United States Attorney,[9] the office of the United States Trustee, the Massachusetts Attorney General, Consumer Protection Division, and the appropriate disciplinary committees of the Rhode Island and Massachusetts Bar Associations.

attorney all the facts and circumstances of the case, the names of the witnesses and the offense or offenses believed to have been committed. Where one of such officers has made such report, the others need not do so.

(b) The United States attorney thereupon shall inquire into the facts and report thereon to the judge, and if it appears probable that any such offense has been committed, shall without delay, present the matter to the grand jury, unless upon inquiry and examination he decides that the ends of public justice do not require investigation or prosecution, in which case he shall report the facts to the Attorney General for his direction.

8. A letter from her physician submitted to the Court without objection was not introduced in evidence, but its reference to Ann Bove's medical problems confirms the observations of the Court.

9. *See* 18 U.S.C. § 3057, *supra*.