**In re Peter F. Tunde BALOGUN, Debtor.**

**Bankruptcy No. 85–00302.**

United States Bankruptcy Court,
M.D. Alabama, E.D.

Dec. 20, 1985.

Charles P. Miller, Miller and Beers, Montgomery, Ala., for Fidelity Nat. Bank.

Deborah Hill Biggers, Biggers & Biggers, Tuskegee, Ala., for debtor.

## ORDER ON MOTION TO MODIFY AUTOMATIC STAY

A. POPE GORDON, Bankruptcy Judge.

The creditor, Fidelity National Bank, filed a motion requesting termination of the automatic stay imposed by 11 U.S.C. § 362(a) to permit the creditor to recover a 1982 Mercedes car on which it has a prepetition security interest lien. After being continued several times for compliance with the pretrial order, the case was called for preliminary hearing on December 17, 1985. Present were the creditor's counsel and the debtor. Counsel for the debtor did not appear. The debtor appeared pro se at his request.

A pretrial order was issued in this case which required that any party desiring to question witnesses at the hearing file a request to that effect at least 72 hours prior to the hearing. No such request was filed. Therefore, the case is taken as submitted on the pleadings, the pretrial statement, and the arguments of counsel.

This is a case filed under 11 U.S.C. Chapter 11.

The court takes judicial notice of the Chapter 11 plan and the order confirming the plan which are part of the court file in this case, pursuant to Rule 201(c) of the Federal Rules of Evidence.

This case involves the interaction of several Bankruptcy Code sections from different chapters of the Code. The sections and their relationships are set out in detail.

At the filing of the debtor's petition on February 21, 1985, the debtor owned a Mercedes sedan. The bank held a note and security lien on the car. In June 1985, the debtor defaulted on the note and ceased making the scheduled payments on the car. Under 11 U.S.C. § 362(a), the bank was stayed from any action against the debtor or his property to enforce the security agreement.

After several amendments, the final version of the debtor's plan was filed on October 7, 1985. As to the bank, the plan provided:

"The remaining secured creditors: ... Fidelity National Bank ... have not accelerated the payment of the balance due on their obligations. Therefore, the Debtor proposes to cure any delinquencies and continue paying the respective monthly installments on each obligation as they become due."

The order confirming the plan was entered on October 17, 1985. The key to this decision is the effect of the confirmation of a plan in a Chapter 11 case.

Section 1141(b) reads:

"Except as provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."

The effect of § 1141(b) is to transfer the property of the Chapter 11 estate out of the estate and vest the property in the debtor absent some contrary provision in the plan or the order confirming the plan. Following confirmation, the Chapter 11 estate ceases to exist. *In re: Barker Medical Company, Inc.*, 55 B.R. 435 (Bkrtcy.M.D.AL 1985). The operation of § 1141(b) in the case at bar yields two results: first, the automobile is no longer property of the estate; second, the terms of the plan establish the new relationship between the bank and the debtor. Terms of the security agreement which conflict with provisions of the plan are no longer enforceable.

Section 362(c)(1) reads:

"Except as provided in subsections (d), (e), and (f) of this section—
(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate;"

Under § 362(c)(1) the stay against an act to recover property automatically terminates when that property is no longer prop-

erty of the estate. Since § 1141(b) has already moved the Mercedes sedan out of the Chapter 11 estate, the stay is no longer in effect as to the car.

Section 1141(d)(1) reads:

"Except as otherwise provided ... in the plan ... the confirmation of a plan— (A) discharges the debtor from any debt that arose before the date of such confirmation ..."

In the case at bar, the debtor has been discharged of all debts not otherwise provided for by the plan. The plan makes special provision for the bank. Therefore, the indebtedness owed the bank is not discharged under § 1141(d)(1). Instead, the debt continues and is payable in the amount and manner provided by the plan.

Section 362(c)(2) reads:

"[T]he stay of any other act under subsection (a) of this section continues until the earliest of— (A) the time the case is closed; (B) the time the case is dismissed; or (C) if the case is a case under Chapter 7 of this title concerning an individual or a case under Chapter 9, 11, or 13 of this title, *the time a discharge is granted* or denied." (emphasis added)

This debtor has received a discharge under § 1141(d)(1). By operation of § 362(c)(2)(C), the automatic stay is now terminated as to any act against the debtor personally.

■ It is important to note that § 1141(a) provides that the confirmed plan binds both the debtor and the bank. Both parties are obligated to perform under the provisions of the plan. If the debtor defaults under the plan, creditor relief is available in the appropriate forum. *In re: Ernst and A.C.E. Corporation,* 12 C.B.C. 2d 305, 45 B.R. 700 (D.MN 1985). The debtor is no longer shielded by the automatic stay. If he fails to carry out the confirmed plan, it would be inappropriate to hold that the creditor could not proceed in the proper state forum to enforce its rights under the plan.

Turning now to the circumstances presented in this case, the court notes that the debtor's plan has two provisions that affect the relationship of the debtor and the bank. First, the debtor will cure any arrearages owed the bank. Second, the debtor will make payments to the bank as they become due under the original agreement between the parties.

■ The parties agree that no payments have been made since June, 1985. The plan was confirmed October 17, 1985. The arrearages that existed at confirmation have not been cured. The debtor has asked that he be given until January 15, 1986 to cure the arrearages. The plan does not provide a date by which the arrearages are to be cured. The court concludes that a reasonable time must be given the debtor. The debtor shall be ordered to cure the arrearages that existed at the time of confirmation not later than January 15, 1986. Failure to comply will result in default by the debtor with this provision of the plan.

■ Following confirmation, the debtor was to make payments as they came due. Two payments are presently due and payable. The debtor has not made either payment. The court concludes that the debtor is in default on this provision of the plan. Therefore, the creditor may seek his remedy in the appropriate forum.

■ In summary, the motion of the creditor for relief from stay is moot because the stay as to acts against property of the estate and the stay as to acts against the debtor personally automatically terminated upon the confirmation of the debtor's Chapter 11 plan. The debtor has defaulted on that provision of his plan requiring that he make payments to the bank as the payments come due and the creditor may seek his remedy. Therefore, it is

ORDERED that—

1. January 15, 1986, is fixed as the last day for the debtor to cure the arrearages that were due Fidelity National Bank at the date of confirmation of the debtor's Chapter 11 plan.

2. The motion of Fidelity National Bank for relief from stay is hereby DISMISSED as moot.