In re **AYLESBURY INN, INC.,** Wade Mark 80, Inc., Wade Mark Dewitt, Inc., Wade Mark 78, Inc., Wade Mark Eleven, Inc., and Wade Mark Seneca, Inc., Debtors.

Bankruptcy Nos. 87–01041 to 87–01046.

United States Bankruptcy Court, N.D. New York.

June 27, 1990.

Costello, Cooney & Fearon, Syracuse, N.Y. (Louise Magnarelli, of counsel), for Creditors' Committee.

Lee & LeForestier, P.C., Troy, N.Y. (Thomas A. Dussault, of counsel), for debtors.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

The Court considers herein the Applications For Allowance of Professional Fees ("Fee Applications") filed by the Unsecured Creditors' Committee ("Committee") on November 8, 1989, seeking compensation for its attorneys, Costello, Cooney & Fearon, Esqs. ("Costello") for services rendered in each of these Chapter 11 cases, following confirmation of the Debtors' Plans.

The total fee sought by Costello in connection with all six cases is $7,956.00, plus disbursements. It is alleged that the services rendered by Costello arose out of its efforts on behalf of the Committee, "in collecting the payments due from the debtor under its reorganization plan." (*See* Fee Application para. 2).

A hearing on the Fee Applications was held before the Court after appropriate notice, on December 5, 1989, and the hearing was thereafter adjourned on the consent of the parties, with final submission of the matters for decision occurring on March 8, 1990.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction of this contested matter pursuant to 28 U.S.C. § 1334(b) and § 157(a), (b)(1) and (2)(A).

## ARGUMENTS

As indicated, the Committee contends that it has had to seek the services of Costello who was appointed to act as its counsel in all six cases by an Order of the Court dated November 13, 1987, in order to force the Debtors' post-confirmation compliance with the terms of the various plans, all of which were confirmed by an Order of the Court dated July 1, 1988 ("Confirmation Order").

The Debtors oppose the Fee Applications on two grounds. First, they contend that the services of Costello were unnecessary as they resulted from the Committees' misunderstanding of the confirmed plans in two of the Debtors' cases (Wade Mark, 78, Inc. and Wademark 80, Inc.), though the Debtors' papers fail to particularize the alleged misunderstandings. Second, and more significantly, the Debtors contend that the Court's jurisdiction over all of the Debtors' cases has terminated because "By the express provisions of the plan and confirmation order the Bankruptcy Court was divested of jurisdiction over the case after such time as substantial confirmation [sic] had taken place." (*See* Answering Affirmation of Michael Jude O'Connor, Esq., Attorney for Debtor, para. 4).[1]

Debtors reference Article VII of the Amended Plan of Reorganization dated March 11, 1988 ("Amended Plan"), which states that "[t]he Court shall retain jurisdiction until there is substantial [consummation] of the Plan. Substantial [consummation] is defined as when the first payment made pursuant to the Plan is made." In support of its opposition to the Fee Application, the Debtors submit the Affidavit of John Wade, sworn to the 22nd day of February, 1990, ("Wade Affidavit"), which alleges that the "initial payment under the confirmed plan was made on or before the last day of December, 1988." (*See* Wade Affidavit, para. 4). On March 7, 1990, the Debtors filed a second affidavit of John Wade to which were attached photocopies of cancelled checks made payable to various creditors, all of which were dated in the latter part of 1988.

Costello contends that paragraph four of the Confirmation Order contemplates the fixing of professional fees after confirma-

---

1. There does not appear to be any dispute that the word, "confirmation" has been mistakenly inserted in the Debtors' Plan where the word "consummation" properly should appear. Thus, the Court will read the term as "substantial consummation" where the mistake occurs.

tion of the plan, and thus, one must infer a retention of jurisdiction for that purpose.[2] Costello also cites case law in support of its contention that the Debtors have not substantially consummated their plans, and further contends that substantial consummation is not dispositive on the issue of the Court's ability to entertain its Fee Applications as it is in considering a modification of the confirmed plan.

The Debtors reference Local Rule 40(b) of the Local Bankruptcy Rules for the Northern District of New York, which permits the Court to make a finding of substantial consummation following the first payment under the confirmed plan. The Debtors argue that even though Local Rule 40(b) did not become effective until April 15, 1989, it reflects the Court's attitude in this District toward divesting itself of jurisdiction upon the first payment being made under the confirmed plans.

## DISCUSSION

Absent express provisions in a Chapter 11 plan or the order of confirmation, bankruptcy courts take varying positions as to when their jurisdiction terminates post-confirmation. Courts have generally recognized the tension between retaining jurisdiction after confirmation until entry of a final decree and ending the "tutelage" status of the debtor-in-possession. *See North American Car Corp. v. Peerless Weighing and Vending Machine Corp.*, 143 F.2d 938, 940 (2d Cir.1944).

Costello cites Bankruptcy Judge Clark's decision in *In re Tri-L Corp.*, 65 B.R. 774 (Bankr.D.Utah 1986), wherein the court embraced what may be said to be the liberal view that "the Court may expressly retain jurisdiction over the plan, during its consummation, under a provision of the plan itself or the order of confirmation." *Id.* at 778. Bankruptcy Judge Clark also concluded that post-confirmation, attorneys' fees, "are not governed by Section 503(b)(1)(A) and (B), which the courts applied in the

foregoing cases, but by Section 503(b)(2) which makes no reference to the 'estate', but instead provides an administrative expense priority for 'compensation and reimbursement awarded under Section 330(a)'." *Id.* at 777.

At the other end of the spectrum are those cases which promote the concept that the Chapter 11 debtor should be "weaned" from the jurisdiction of the bankruptcy court as soon post-confirmation as possible. *See e.g., In re Hayball Trucking, Inc.*, 67 B.R. 681 (Bankr.E.D.Mich.1986). The Court need not resolve this tension, however, as the instant Plan is not silent or ambiguous on the issue of the Court's post-confirmation jurisdiction.

■ The initial question before this Court is whether a bankruptcy court's jurisdiction may extend further than the point at which the confirmed plan properly divests the court of jurisdiction. Based upon a review of the case law, the Court must conclude that the plan itself must be the primary guide as to the court's post confirmation jurisdiction. *See In re Allied Technology, Inc.*, 25 B.R. 484, 499 (Bankr.S.D. Ohio 1982) ("key document for determination of this Court's post confirmation jurisdiction is ... the Plan itself"). A court must, therefore, first look to the confirmed plan in determining the issue of the preservation or divestment of its post confirmation jurisdiction. *See In re Tilco, Inc.*, 558 F.2d 1369 (10th Cir.1977); *In re Hudson Feather & Down Products, Inc.*, 36 B.R. 466, 467–68 (E.D.N.Y.1984).

■ The instant Plan provides at Article VII, entitled "Jurisdiction Of The Court," that the "Court shall retain jurisdiction until there is substantial [consummation]." It further defines substantial consummation as that point "when the first payment made pursuant to the Plan is made." The language is clear and unambiguous: once the first payment is made pursuant to the Plan, the Court is divested of jurisdiction over the case. It is not improper, in fact it is a prudent practice, to define certain fu-

---

**2.** Paragraph four of the July 1, 1988 Confirmation Order provides in relevant part that, "[a]ll payments made or promised by the Debtor ... for services ... in connection with, the Plan and incident to the case, have been fully disclosed to the Court ... or, if to be fixed after confirmation of the Plan, will be subject to the approval of the [bankruptcy] Court;"

ture events thereby eliminating a source of prospective misunderstanding between the parties. While certain extensions or attenuations of a court's jurisdiction may be unconfirmable under Code § 1129, defining substantial consummation, in accordance with Code § 1101(2) and the consequences thereof, as the parties have undertaken here, is not contrary to the Code's policies and is within the permissible boundary of the parties.

■ The Committee was formed and Costello was appointed well before confirmation of the instant Plan. It was incumbent upon them, as parties to the Plan, to review the proposed Plan and state their objections at the confirmation hearing. The confirmation of the Plan binds all of the creditors as well as the debtor.

Costello argues that because a provision of the Confirmation Order "specifically contemplates payment for professional services after confirmation of the Plan," the Court retains jurisdiction to consider its fee application. (See Costello's Reply Affirmation filed January 29, 1990). The Court agrees that where a provision of the confirmation order conflicts with one of the confirmed plan, ambiguity is created. *See In re Pittsburgh Terminal Coal Corp.*, 183 F.2d 520, 522 (3d Cir.1950) (jurisdiction depends upon "provisions of the plan as confirmed and reservations, not inconsistent therewith, contained in the order of confirmation"). There is, however, no ambiguity evident here.

The provision which Costello claims grants the Court jurisdiction to consider their fee application, arguably appears to apply only to those services which were performed pre-confirmation. Paragraph four provides that all of the "payments made or promised" for services have been "fully disclosed to the Court." This indicates that the services for which the Debtors paid or promised to pay had been performed by the date of confirmation in order to fully disclose them to the Court at that time. Paragraph four continues to provide that those fully disclosed payments or promises of payment which are to be "fixed after confirmation of the Plan" will be subject to the Court's approval. The Court notes the absence of specific language to

the effect that it may pass upon the performance of post confirmation services. It appears, rather, that payment for only those services which were disclosed to the Court, but not actually paid or approved by the date of confirmation, could be "fixed" post-confirmation by the Court. Even assuming that paragraph four does reference the fixing of compensation for post-confirmation services exclusively, the period from July 1, 1988 through November or December 1988 (the date of the first payment under the various plans) would appear to provide a reasonable period in which payment for post-confirmation services could be applied for. Costello's services, however, do not fall within this period. Thus, under either view, paragraph four of the Confirmation Order is compatible with the termination of jurisdiction provisions of Article VII of the Debtors' Plans.

■ In conclusion, the Court notes that the use of the word "may" in Code § 1142 connotes permissive, as opposed to mandatory, post confirmation jurisdiction which the bankruptcy court may exercise as "necessary for the consummation of the plan." Absent provision in the plan to the contrary, as a general guide, the Court concurs with *In re J.M. Fields, Inc.*, 26 B.R. 852, 854 (Bankr.S.D.N.Y.1983) (quoting *Claybrook Drilling Co. v. Divanco, Inc.*, 336 F.2d 697, 701 (10th Cir.1964)) which stated that a court's post-confirmation jurisdiction "is restricted to only those matters pending at the time of confirmation."

Based upon the foregoing reasons, the Court does not have jurisdiction over the subject matter and, therefore, must deny Costello's instant Fee Applications solely on that basis relegating Costello to a court of competent jurisdiction to seek enforcement of its rights which arise from the contractual nature of the confirmed plan or under other applicable law. *See In re Ernst*, 45 B.R. 700, 702–03 (Bankr.D.Minn. 1985); *In re Balogun*, 56 B.R. 117, 119 (Bankr.M.D.Ala.1985).

IT IS SO ORDERED.